**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO.:**

------------------------------------------------------------------------x
INDIAN HARBOR INSURANCE COMPANY,
U.S. SPECIALTY INSURANCE COMPANY,
AXIS INSURANCE COMPANY,
FEDERAL INSURANCE COMPANY,
CHUBB UNDERWRITING AGENCIES LIMITED FOR
AND ON BEHALF OF SYNDICATE 2488
(T/A ACE GLOBAL MARKETS), ST. PAUL
MERCURY INSURANCE COMPANY, TWIN CITY
FIRE INSURANCE COMPANY, ACE AMERICAN
INSURANCE COMPANY,

                                        Plaintiffs,

                                                        Case No.
              -against-

TRUIST BANK,

                                        Defendant.
------------------------------------------------------------------------x

## COMPLAINT

Plaintiffs Indian Harbor Insurance Company ("AXA XL"), U.S. Specialty Insurance Company ("U.S. Specialty"), AXIS Insurance Company ("AXIS"), Federal Insurance Co. ("Federal"), Chubb Underwriting Agencies Limited for and on behalf of Syndicate 2488 (t/a ACE Global Markets) ("ACE GM"), St. Paul Mercury Insurance Company ("Travelers"), Twin City Fire Insurance Company, and ACE American Insurance Company ("ACE American") (collectively, the "Insurers") by and through their undersigned attorneys, as and for their Complaint for Declaratory Judgment against Defendant Truist Bank ("Defendant", "Truist", or "SunTrust"), state as follows:

## NATURE OF THE ACTION

1.      SunTrust Bank was first sued by customers for improper overdraft charges during the insurance policy period of October 1, 2008 to October 1, 2009 ("Tower 1"). This lawsuit concerns insurance coverage for a related overdraft suit that is deemed first made during that policy period.

2.      The Insurers issued separate insurance policies comprising a "tower" of claims-made insurance to SunTrust for the October 1, 2009 to October 1, 2010 Policy Period ("Tower 2").

3.      The insurance policies issued to SunTrust (i) provide coverage only for Claims that are first made or deemed made during their respective Policy Periods; and (ii) group together – and treat as a single Claim – all Claims that arise from either the same wrongful acts or wrongful acts that are logically or causally connected by reason of any fact, circumstance, situation, transaction or event.

4.      During the Tower 1 Policy Period, at least two putative class actions were filed against SunTrust Bank ("SunTrust" or the "Bank") alleging that SunTrust's overdraft fees were unlawful, including: (i) *Peterson v. SunTrust Banks, Inc.*, C.A. No. 2009CV167326, filed in Georgia Superior Court in Fulton County (April 8, 2009); and (ii) *Buffington v. SunTrust Banks, Inc.*, C.A. No. 2009CV168756, filed in Georgia Superior Court in Fulton County (May 6, 2009) (together, the "2008-09 Overdraft Actions").

5.      SunTrust also reported the following lawsuits as overdraft fee cases: (i) *Bailey v. SunTrust Bank*, 09-11000G, filed in the Orleans Parish District Court of Louisiana (November 29, 2009); (ii) *Bickerstaff v. SunTrust Bank*, C.A. No. 10-EV-010485-H, filed in Georgia Superior Court in Fulton County (July 12, 2010); (iii) *Moore v. SunTrust Bank*, C.A. No. 11CV22454, filed

2

in the U.S. District Court for the Southern District of Florida (July 8, 2011); (iv) *Igein v. SunTrust Banks, Inc.*, C.A. No. 2011CV209671, filed in the Georgia Superior Court in Fulton County (December 28, 2011); and (v) *Byrd v. SunTrust Bank*, 2:12-cv-02314-JPM-cgc, filed in the U.S. District Court for the Western District of Tennessee (April 23, 2012).

6. The 2008-09 Overdraft Actions alleged that SunTrust's overdraft fees were unlawful, including because SunTrust ordered transactions from highest to lowest in order to generate additional overdraft fees, that overdraft fees were unconscionable and constituted unjust enrichment, and that SunTrust neglected to properly disclose its overdraft protection fees. At base, the 2008-09 Overdraft Actions challenged the excessiveness of overdraft fees charged to plaintiff classes.

7. *Bickerstaff v. SunTrust Bank*, C.A. No. 10-EV-010485-H (Ga. Super. Ct., July 12, 2010) ("*Bickerstaff*") was filed during the Tower 2 Policy Period. Like the 2008-09 Overdraft Actions, *Bickerstaff* alleges that SunTrust wrongfully charged customers excessive overdraft fees. Thus, when SunTrust provided notice of *Bickerstaff* to Plaintiffs in 2010, SunTrust took the position that Bickerstaff was "inter-related to the Marsha Peterson class action received during the 10/1/08-09 policy period." Thus, *Bickerstaff* should be deemed a single Claim with the *Peterson* action that was first made during the Tower 1 Policy Period.

8. SunTrust's position that *Bickerstaff* was inter-related to *Peterson* was correct: the plaintiffs in *Bickerstaff* and the 2008-09 Overdraft Actions all allege that they were charged excessive overdraft fees.

9. In addition, the *Bickerstaff* class overlapped with that of the 2008-09 Overdraft Actions, and SunTrust itself has argued that the damages also overlapped.

10.     On May 25, 2021, SunTrust notified AXA XL that SunTrust was changing its position on date of Claim and that *Bickerstaff* should be treated as a claim made under Tower 2.

11.     Plaintiffs are certain of SunTrust's Tower 2 insurers. The Insurers[1] bring this declaratory judgment action pursuant to 28 U.S.C. §§ 2201–2202, seeking this Court's determination that *Bickerstaff* is not a Claim first made during the Tower 2 Policy Period.

12.     Plaintiffs seek a determination that the settlement of *Bickerstaff* is separately not covered by the Tower 2 policies (defined below) because the settlement does not constitute Damages, as defined by the Tower 2 policies. Plaintiffs' policies expressly exclude fees and interest from the definition of Damages, and  the settlement money SunTrust seeks from the Insurers constitutes (i) the allegedly excessive overdraft fees paid to SunTrust, and/or (ii) interest.

13.     An actual and justiciable controversy exists among the parties as to which a declaratory judgment setting forth their respective rights and obligations under the subject insurance policies is necessary and appropriate.

## JURISDICTION AND VENUE

14.     Plaintiff Indian Harbor Insurance Company ("AXA XL") is an insurance company incorporated under the laws of the state of Delaware, with a principal place of business located in Stamford, Connecticut.

15.     U.S. Specialty Insurance Company ("U.S. Specialty") is an insurance company incorporated under the laws of Texas with a principal place of business located in Texas.

16.     AXIS Insurance Company ("AXIS") is an insurance company incorporated under the laws of Illinois, with a principal place of business located in Georgia.

---

[1] Plaintiffs Federal, ACE GM, Ace American, and Travelers do not join in the "First Cause of Action" or any allegations which pertain to the "First Cause of Action."

4

17. Federal Insurance Co. ("Federal") is an insurance company incorporated under the laws of Indiana, with a principal place of business located in New Jersey.

18. St. Paul Mercury Insurance Company ("Travelers") is an insurance company incorporated under the laws of Minnesota, with a principal place of business located in Connecticut.

19. Chubb Underwriting Agencies Limited for and on behalf of Syndicate 2488 (t/a ACE Global Markets) ("ACE GM") is an insurance company registered in London, England and has its principal place of business in London, England.

20. Twin City Fire Insurance Company ("Twin City") is an insurance company incorporated under the laws of Indiana, with a principal place of business located in Connecticut.

21. ACE American Insurance Company ("ACE American") is an insurance company incorporated under the laws of Pennsylvania, with a principal place of business located in Pennsylvania.

22. On December 9, 2019, SunTrust merged with BB&T Corporation, and the resulting company was renamed Truist Bank. Defendant Truist is a corporation organized and existing under the laws of the State of North Carolina with its principal place of business in Charlotte, North Carolina.

23. Because Plaintiffs and Defendant are citizens of different states, and a foreign party (ACE GM) is an additional plaintiff, this Court has original jurisdiction over this civil action based upon diversity of citizenship under 28 U.S.C. § 1332(a).

24. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5

25. Venue in this District is proper, pursuant to 28 U.S.C. § 1391(b)(1), as a judicial district in which the Defendant resides.

## THE 2009-2010 INSURANCE PROGRAM

26. Plaintiff AXA XL issued a primary blended policy number ELU113865-09 to SunTrust for the October 1, 2009 to October 1, 2010 Policy Period (the "Primary Policy"). Pursuant to its terms and conditions, the Primary Policy provides a $25 million aggregate Limit of Liability, subject to a $25 million self-insured retention. A true and correct copy of the Primary Policy is attached hereto as Exhibit A.

27. In addition, various insurers issued excess insurance policies to SunTrust as detailed in the chart below (collectively, the "Excess Policies," and together with the Primary Policy, the "Tower 2 Policies"):

| Excess Insurer[2] | Policy Number | Layer | Limit | Underlying Limits |
|---|---|---|---|---|
| Tokio Marine HCC (U.S. Specialty Ins. Co.) | 24MGU09A19970 | 1st excess | $15M | $25M |
| Max Bermuda* | 308563248PLFF2009 | 2nd excess | $10M p/o $15M | $40M |
| Twin Rivers II | N/A | 2nd excess captive | $5M p/o $15M | $40M |
| Axis Ins. Co. | MNN710032/01/2009 | 3rd excess | $10M | $55M |
| AWAC Ltd. (Bermuda)* | C006292/004 | 4th excess | $10M | $65M |
| Chubb (Federal Ins. Co.) | 8207-3677 | 5th excess | $10M | $75M |
| Travelers (St. Paul Mercury Ins. Co.) | 568CM3088 | 6th excess | $10M | $85M |
| Lloyds (ACE GM) | QA068609 | 7th excess | $5M | $95M |
| Hartford (Twin City Fire Ins. Co.) | 00IC0259551-09 | 8th excess | $10M | $100M |
| ACE US (ACE American Ins. Co.) | DOXG25568205 001 | 9th excess | $10M | $110M |

---

[2] The Insurers listed with an asterisk issued policies that are subject to arbitration provisions. Twin Rivers II is a captive insurer of SunTrust and has not joined this lawsuit.

6

| Excess Insurer[2] | Policy Number | Layer | Limit | Underlying Limits |
|---|---|---|---|---|
| AXIS Bermuda (Axis Specialty Ltd.)* | 1136520109QA | 10th excess | $5M | $120M |

28. The Excess Policies follow form to the terms and conditions of the Primary Policy, except with respect to attachment point and as otherwise provided.

29. Under Section C, Financial Institution Professional Liability, the Primary Policy provides coverage for all Damages and Claims Expenses resulting from any Claim first made against the Insured during the Policy Period for a Wrongful Act.

30. The Primary Policy defines Claim to mean, in pertinent part, a civil proceeding, which is commenced by service of a complaint or similar pleading.

31. The Primary Policy's General Terms and Conditions, Section 4, provides in part:

> [A]ll Claims that arise from the same Wrongful Act or Wrongful Employment Act or Wrongful Acts or Wrongful Employment Acts that are logically or causally connected by reason of any fact, circumstance, situation, transaction or event, shall be considered a single Claim, and shall be subject to only one retention amount, irrespective of the number of claimants. Such Claims shall be deemed to be first made on the date the first such Claim is made or deemed to be made pursuant to Section 15 of the General Terms and Conditions Section of this policy, regardless of whether such date is before or during the Policy Period.

32. With respect to date of Claim for related Claims, the definition of Claim also provides:

> All Claims arising from the same Wrongful Act or Wrongful Acts that are logically or causally connected by reason of any fact, circumstance, situation, transaction or event shall be considered a single Claim, irrespective of the number of claimants, and all such related Claims shall be deemed to have been made at the time the first Claim was made or deemed to have been made.

33. "Wrongful Act means any actual or alleged act, error, omission, misstatement or misleading statement, committed by any Insured, or by any person for whom the Insured is legally

7

responsible, in the rendering of or failure to render Professional Services or the performance of Lending Acts."

34. The Primary Policy defines Professional Services as follows:

Professional Services means those services rendered or required to be rendered by any Insured that are permitted by the Office of the Comptroller of the Currency and/or Federal Reserve regulations and/or regulation of any other federal or state banking regulatory authority or any other federal or state regulatory authority or any government authority of any jurisdiction in the world for a customer or client or prospective customer or client of the Company for a fee or under contract or not provided for a fee or under contract by the Insured but is provided at no cost in order to preserve or promote an existing or prospective customer relationship. Such services include, but are not limited to, the services on file with the Underwriter.

Professional Services shall automatically include any professional service which is not the same as, or similar to, the type of Professional Services provided at the inception date of this Policy, if such Professional Service is rendered to a third party for a fee or under a contract or not provided for a fee or under contract by the Insured but is provided at no cost in order to preserve or promote an existing or prospective customer relationship.

35. The Primary Policy defines Damages as follows:

Damages shall mean a judgment, award, surcharge or settlement as a result of a Claim and any award of pre- and post judgment interest, attorneys' fees and costs. The term Damages shall exclude:

(a)     Taxes, civil or criminal fines or penalties;

(b)     any amount for which no Insured or any partner, director, officer or employee thereof is financially liable or for which there is no legal recourse against any Insured or any partner, director, officer or employee thereof;

(c)     salaries or commissions of any Insured;

(d)     any fees, commissions or charges for Professional Services or Lending Acts paid or payable to an Insured;

(e)     principal, interest, or other monies either paid, accrued or due an Insured as the result of any loan, lease or extension of credit; or

8

(f)     any direct investment of the Insured in any debt or equity security underwritten by the Insured

(g)     loss of the actual money, securities, property, Documents or other items of value in the custody or control of the Insureds, or its agents, or in transit.

Provided, however, this Definition shall not exclude, and Damages shall include, punitive and exemplary damages and the multiplied portion of any trebled or multiplied damage award. With respect to coverage for punitive or exemplary damages and the multiplied portion of any trebled or multiplied damage award, the enforceability of this Definition 5 shall be governed by the law of the jurisdiction that most favors coverage for such punitive or exemplary damages.

## THE UNDERLYING MATTERS

### *Peterson v. SunTrust*

36.     On April 8, 2009, *Peterson v. SunTrust Banks, Inc.*, C.A. No. 2009cv167326, was filed as a putative class action in the Superior Court of Fulton County, Georgia ("*Peterson*"). A true and correct copy of the *Peterson* complaint is attached hereto as Exhibit B. *Peterson* alleged that SunTrust assessed overdraft charges in an unfair manner that was harmful to its customers, and that SunTrust engaged in these practices in order to increase the fees imposed on customer accounts. Specifically, the *Peterson* plaintiff alleged that SunTrust assessed overdraft fees by ordering the charges against customer accounts from largest to smallest. Because SunTrust charges an overdraft fee for each transaction that cannot be covered, this allowed SunTrust to charge a greater number of overdraft fees.

37.     On May 11, 2010, the operative Second Amended Complaint was filed. The *Peterson* plaintiff, suing only on behalf of herself, alleged that between 2007 and 2009 SunTrust assessed unnecessary, unreasonable and excessive overdraft fees for the purpose of increasing its fee income to the detriment of its customers. The *Peterson* plaintiff also alleged that SunTrust's disclosures regarding overdraft fees were inadequate and ineffective.

9

38. On July 27, 2011, *Peterson* was voluntarily dismissed.

**Buffington v. SunTrust**

39. On May 6, 2009, *Buffington v. SunTrust Banks, Inc.*, C.A. No. 2009cv168756 was filed as a putative class action in the Superior Court of Fulton County, Georgia ("*Buffington*"). A true and correct copy of the *Buffington* complaint is attached hereto as Exhibit C. *Buffington* alleged that SunTrust routinely engaged in unfair and improper practices in the administration of its customers' checking accounts for the purpose of charging excessive overdraft protection fees. Like *Peterson*, the Buffington plaintiffs alleged that SunTrust posted charges to customer accounts in order of largest to smallest to increase overdraft fees.

40. SunTrust removed *Buffington* to federal court, and in 2009 the case was consolidated by the Judicial Panel on Multidistrict Litigation into *In re Checking Account Overdraft Litigation*, MDL No. 2036, pending in the U.S. District Court for the Southern District of Florida.

41. On May 10, 2010, the District Court entered an order denying SunTrust's motion to compel arbitration on the grounds that the class action waiver in SunTrust's Deposit Agreement was substantively and procedurally unconscionable.

42. On March 1, 2012, the United States Court of Appeals for the Eleventh Circuit reversed that decision and issued an opinion compelling the *Buffington* plaintiffs to individually arbitrate all of their claims against SunTrust and staying the lawsuit pending arbitration.

43. The *Buffington* plaintiffs thereafter informed the District Court that they would drop their claim if compelled to arbitrate because they lacked sufficient funds to arbitrate the matter individually.

44. On December 12, 2012, the District Court dismissed *Buffington* with prejudice.

10

*Bickerstaff v. SunTrust*

45.　In June 2010, in response to the District Court's decision in *Buffington* finding the class action waiver in the Deposit Agreement unconscionable, SunTrust amended the Deposit Agreement to provide its existing customers with the right to reject the arbitration agreement on or before October 1, 2010.

46.　*Bickerstaff* was filed on July 12, 2010 in the Superior Court of Fulton County, Georgia. A true and correct copy of the *Bickerstaff* complaint is attached hereto as Exhibit D.

47.　Like the *Buffington* and *Peterson* plaintiffs, *Bickerstaff* challenged SunTrust's allegedly excessive overdraft protection fees, and alleged that SunTrust used its overdraft program to increase the number and amount of service fees imposed on consumer accounts. In fact, when the *Buffington* plaintiffs sought to intervene in *Bickerstaff,* the *Buffington* plaintiffs argued that the two actions involved "much of the same conduct" and were brought on behalf of overlapping putative classes. *See* Nov. 8, 2010 e-mail from Mark Flynn of SunTrust, a true and correct copy of which is attached hereto as Exhibit E; *Bickerstaff v. SunTrust Bank, Inc.*, 10-EV-010485-H (Superior Ct. Fulton Cty., Sept. 30, 2010) (Buffingtons' Motion for Leave to Intervene or, in the Alternative, Motion for Joinder as Co-Plaintiffs, at *1).

48.　Upon information and belief, to avoid having his claims moved to the MDL with *Buffington* (which sought to represent a nationwide class) and to secure a greater recovery, Bickerstaff sued under Georgia state law and sought to represent a class of Georgia residents. Bickerstaff alleged that SunTrust's overdraft protection was a *de facto* loan automatically issued by SunTrust to its customers to cover transactions for which their accounts contained insufficient funds, and that those fees constituted interest that violated Georgia's usury laws.

49. SunTrust argued in opposing the *Buffington* plaintiffs' motion to intervene, "certain putative members of the nationwide class they seek to represent are also putative members of the statewide class Plaintiff seeks to represent in this action. While the legal theories alleged by the Buffingtons and Plaintiff in this action may be different, some or all of the damages claimed in each case are the same." *Bickerstaff v. SunTrust Bank, Inc.*, 10-EV-010485-H (Superior Ct. Fulton Cty., Nov.2, 2010) (SunTrust Bank's Response to the Buffingtons' Motion for Leave to Intervene, or, in the Alternative, Motion for Joinder as Co-Plaintiffs, *at* n.2).

50. Upon information and belief, the difference between *Bickerstaff* and the 2008-09 Overdraft Actions is the result of a procedural tactic to keep *Bickerstaff* out of the MDL and to allow the *Bickerstaff* plaintiffs to secure their own recovery from SunTrust. While Bickerstaff sued SunTrust under a different legal theory, the claims in *Bickerstaff* allege the same wrongdoing and injury as the 2008-09 Overdraft Actions.

**THE BICKERSTAFF SETTLEMENT**

51. After fifteen years of litigation, in January 2026, SunTrust agreed to settle *Bickerstaff* by paying a maximum settlement amount of $240 million (the "Settlement"), which will be distributed according to a Distribution Plan that calculates a recovery based on overdraft fees which settling class members paid to SunTrust.

52. SunTrust has since demanded that the Insurers pay their limits in satisfaction of the Settlement.

53. Even if the Tower 2 Policies are triggered for *Bickerstaff*, the Tower 2 insurers have no obligation to indemnify SunTrust for the Settlement because the Tower 2 Policies exclude from the definition of Damages "fees, commissions or charges for Professional Services or Lending Acts paid or payable to an Insured." The Bank has conceded that "SunTrust's overdraft fees are

12

reasonable charges that compensate the bank for the numerous services the bank provides to its account holders who use overdraft coverage and the costs of the various services." *Bickerstaff v. SunTrust Bank*, No. 10-EV-010485 (Super. Ct. Fulton Cty. Oct. 31, 2023) (SunTrust Bank's Br. In Supp. of Mot. for Summ. J.). Accordingly, there is no coverage for the Settlement, which is calculated based on the overdraft fees paid by the settling class members.

54.     In the alternative, there is no coverage for the Settlement because it represents interest, which is likewise excluded from the definition of Damages. *Bickerstaff* alleged that the overdraft fees were interest charged on an extension of credit by the Bank to cover overdrafts by its customers. The Georgia Court of Appeals ruled that SunTrust's overdraft program was an advance of funds to cover withdrawals for which SunTrust expected repayment, and SunTrust's internal procedures defined an overdraft as "the extension of unsecured credit." The Court of Appeals left open Bickerstaff's claim that the overdraft fees were interest as an issue to be decided by the jury. *SunTrust Bank v. Bickerstaff*, 375 Ga. App. 37, 42 (2025), reconsideration denied (Mar. 19, 2025), cert. denied (Sept. 16, 2025), cert. denied, 223 L. Ed. 2d 516 (Jan. 12, 2026). The Settlement resolved Bickerstaff's usury claims.

### AS AND FOR A FIRST CAUSE OF ACTION
#### (*Bickerstaff* is not a Claim under the Tower 2 Policy Period)

55.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 54 as if fully set forth herein at length.

56.     SunTrust provided notice of *Bickerstaff* to Plaintiffs under the Tower 2 Policies.

57.     *Bickerstaff* alleges Wrongful Acts that are logically and/or causally connected by reason of any fact, circumstance, situation, transaction or event to Wrongful Acts alleged in the 2008-09 Overdraft Actions.

13

58.     Consequently, pursuant to Section 4 of the Primary Policy's General Terms and Conditions, *Bickerstaff* is part of a single Claim together with the 2008-09 Overdraft Actions, and thus is deemed first made on the date *Peterson* was first made.

59.     Because *Bickerstaff* is a Claim first made prior to the inception of the Tower 2 Policies, no coverage is available for *Bickerstaff* under Plaintiffs' Tower 2 Policies.

60.     Plaintiffs are thus entitled to a declaration that they have no obligation to provide coverage to SunTrust in connection with *Bickerstaff*.

### AS AND FOR A SECOND CAUSE OF ACTION
**(The *Bickerstaff* Settlement is not Damages)**

61.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 60 as if fully set forth herein at length.

62.     The Primary Policy, Section C, Financial Institution Professional Liability provides coverage only for Damages and Claims Expenses resulting from a Claim first made against the Insured during the Policy Period for any Wrongful Act in the rendering or failure to render Professional Services.

63.     The *Bickerstaff* Settlement is not Damages as defined by the Primary Policy.

64.     Accordingly, Plaintiffs are entitled to a declaration that they have no obligation to indemnify SunTrust for the Settlement.

14

## <u>RELIEF REQUESTED</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court declare and adjudicate the rights and liabilities of the parties regarding the Tower 2 Policies, together with the following relief:

a. Regarding Count I, declare that Plaintiffs have no duty to defend or indemnify SunTrust in *Bickerstaff* because it is a Claim made prior to the inception of the Tower 2 Policies;

b. Regarding Count II, declare that Plaintiffs have no duty to indemnify SunTrust for the Settlement of *Bickerstaff* because the Settlement is not Damages as defined by the Primary Policy; and

c. grant such other and further relief as it deems just and equitable.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury.

Respectfully submitted, this the 26th day of June 2026.

/s/ Elizabeth F. Booke
Elizabeth F. Booke, Esq.
N.C. Bar Number 63593
**WILEY REIN LLP**
2050 M St NW
Washington, DC 20036
Phone: (202) 719-4526
Email: ebooke@wiley.law

*Attorney for Plaintiff U.S. Specialty Insurance Company*

/s/ Janice Holmes
Janice Holmes, Esq.
N.C. Bar Number 48533

15

**CLYDE & CO US LLP**
1775 Pennsylvania Avenue, NW, 4th Floor
Washington, DC 20006
Phone: 202-747-5100
Email: Janice.Holmes@clydeco.us

*Attorney for AXIS Insurance Company*

/s/ Janelle E. Shirk
Janelle E. Shirk, Esq.
N.C. Bar Number 53927
**KAUFMAN DOLOWICH LLP**
One Battery Park Plaza, 11th Floor, Suite 1120
New York, NY 10004
Phone: (212) 485-9600
Fax: (212) 485-9700
Email: Janelle.shirk@kaufmandolowich.com

*Attorneys for Federal Insurance Company, ACE American Insurance Company, Chubb Underwriting Agencies Limited for and on behalf of Syndicate 2488, and Indian Harbor Insurance Company*

/s/Robert Wilson
Robert Wilson, Esq.
N.C. Bar Number 41688
**HEDRICK GARDNER KINCHELOE & GAROFALO, LLP**
2710 Wycliff Road, Suite 220 | Raleigh, NC 27607
Phone: (919) 719-2835
Fax: (919) 719-2835
rwilson@hedrickgardner.com

*Attorneys for Twin City Fire Ins. Co.*

/s/ Michael W.  Mitchell
Michael W.  Mitchell, Esq.
NC Bar Number 16750
**SMITH ANDERSON**

16

150 Fayetteville Street, Suite 2800
Raleigh, NC  27601
(P) 919-821-6670
(F) 919-821-6800
mmitchell@smithlaw.com

*Attorneys for St. Paul*
*Mercury Insurance Company*

4899-0581-7016, v. 1

17